MICHAEL B. HORROW (SBN 162917)
SCOTT E. CALVERT (SBN 210787)
DONAHUE & HORROW, LLP
1960 E. Grand Avenue, Suite 1215
El Segundo, California 90245
Telephone: (310) 322-0300
Facsimile: (310) 322-0302
Email: mhorrow@donahuehorrow.com
Email: scalvert@donahuehorrow.com

Attorneys for Plaintiff Martin Cooper, M.D.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARTIN COOPER, M.D.,<br><br>Plaintiff,<br><br>vs.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA; FACEY MEDICAL GROUP LONG TERM DISABILITY PLAN; DOES 1-10<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR BENEFITS UNDER A GROUP EMPLOYEE BENEFIT PLAN** |

DONAHUE & HORROW, LLP

Plaintiff alleges as follows:

1. This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1337 and 29 U.S.C. §1132(a), (e), (f) and (g), of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, *et seq*. ("ERISA") as it involves a claim by Plaintiff for long-term disability ("LTD") benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. §1331, as this action involves a federal question.

2. The events or omissions giving rise to Plaintiff's claim occurred in this judicial district, thus venue is proper here pursuant to 28 U.S.C. §1391(b)(2), and the ends of justice so require.

3. The ERISA statute at 29 U.S.C. §1133, in accordance with Regulations of the Secretary of Labor, provides a mechanism for internal appeal of benefit denials. Those avenues of appeal have been exhausted.

4. Plaintiff MARTIN COOPER, M.D., ("Plaintiff" or "Dr. Cooper") is a resident of Los Angeles County and citizen of the State of California, and at all relevant times was an employee of Facey Medical Group and a participant in its employee benefit plan, identified below.

5. Plaintiff alleges upon information and belief that Defendant UNUM LIFE INSURANCE COMPANY OF AMERICA ("UNUM") is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of Maine, and authorized to transact and transacting the business of insurance in this state.

6. Plaintiff is informed and believes and thereon alleges that Defendant FACEY MEDICAL GROUP LONG TERM DISABILITY PLAN ("Plan") is an employee welfare benefit plan established and maintained by Facey Medical Group to provide its employees with monthly long-term disability ("LTD") income insurance protection, and, is the Plan Administrator.

DONAHUE & HORROW, LLP

7. The true names or capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1 through 10, are unknown to Plaintiff who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes and on such information and belief alleges that each of the Defendants sued herein as a DOE is legally responsible in some manner for the events and happenings referred to herein, and will ask leave of this court to amend this complaint to insert their true names and capacities in place and instead of the fictitious names when the same become known to Plaintiff.

8. Unum issued Group Policy No. 949283-001 to Facey Medical Group and the eligible participants and beneficiaries of the Plan, including Dr. Cooper.

9. In defining "disability, " the Plan states, in pertinent part, that:

You are disabled when Unum determines that

- you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and
- you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.

10. The Plan defines "Regular Occupation" as: "the occupation you are routinely performing when your disability begins. Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location."

11. The Plan states that "Material and Substantial Duties," means duties that "are normally required for the performance of your regular occupation" and "cannot be reasonably omitted or modified."

12. During the pendency of his claim, Dr. Cooper was informed that Unum would not use the language from the Plan alone when assessing his disability. Rather, the Company added an additional definition of disability, that states, in pertinent part:

DONAHUE & HORROW, LLP

You are "totally disabled":

> During any period covering a disability for your occupation, own occupation, normal occupation, regular occupation or usual occupation when a disability renders you unable to perform with reasonable continuity the substantial and material acts necessary to pursue your usual occupation in the usual and customary way.

13. Dr. Cooper was further informed that, under the terms of this revised definition of disability, "Usual Occupation" means "the substantial and material acts you are routinely performing for your employer when your disability begins."

14. The Plan includes a 90-day Elimination Period.

15. Under the terms of the Plan, because Dr. Cooper was 86 when he became disabled, he is entitled to a maximum of 12 months of benefits should he become and remain totally disabled.

16. At the time of his disability, and at all relevant times, Dr. Cooper was working as an obstetrician and gynecologist with Facey Medical Group. Dr. Cooper continued to work for more than two decades after most people retire because he loved his work, loved helping patients and loved helping families welcome new babies into the world.

17. Unfortunately, as he aged, Dr. Cooper's vision got progressively worse. Finally, in April 2024, as the result of nuclear cataracts and severe primary open angle glaucoma ("POAG") of both eyes, Dr. Cooper was no longer able to safely perform all of the material and substantial duties required of an obstetrician and gynecologist.

18. Nuclear cataracts are cataracts affecting the center of the lens. Symptoms can include blurred vision, especially in bright light, glare around lights, yellowing or browning of vision, difficulty seeing colors clearly and, in some cases, double vision.

19. POAG is a chronic, progressive optic neuropathy characterized by optic nerve damage and visual field loss. POAG initially leads to gradual loss of peripheral vision, but can progress to central vision loss if left untreated.

20. Not wanting to put the health and safety of his patients and future newborn babies at risk, Dr. Cooper stopped working on or about April 20, 2024.

21. On April 22, 2024, in an attempt to improve his vision, Dr. Cooper had cataract extraction with posterior chamber intraocular lens implantation and goniotomy surgery on his left eye. On May 13, 2024, he submitted to the same procedure on his right eye.

22. Based upon information and belief, Dr. Cooper timely filed a claim for LTD benefits under the Plan.

23. In support of his claim, Dr. Cooper completed Unum's Long Term Disability Claim forms, and returned them to the company. These documents included an Employer Statement, dated May 31, 2024, confirming Dr. Cooper's full-time employment as of the date of his disability.

24. Dr. Cooper also completed an "Employee/Individual Statement," in which he explained that he suffered from glaucoma and cataracts, which caused an "inability to see clearly." These diagnoses and symptoms were confirmed in the claim forms and medical records that Dr. Cooper provided to Unum.

25. For example, Dr. Cooper provided Unum with a copy of an Attending Physician Statement completed by Kayur H. Shah, M.D., on June 3, 2024. Dr. Shah, an ophthalmologist, stated that he advised Dr. Cooper to stop working effective April 22, 2024 because of "age-related nuclear cataract, right and left eye; primary open angle glaucoma of both eyes, severe stage." Dr. Shah listed Dr. Cooper's diagnoses as H25.12 (age-related nuclear cataract of the left eye), H25.11 (age-related nuclear cataract of the right eye) and H40.1133 (primary open-angle glaucoma, bilateral, severe stage). In the document, Dr. Shah noted that on April 22, 2024 and May 13, 2024, Dr. Cooper underwent surgery on his left and right eyes, respectively.

DONAHUE & HORROW, LLP

26. While these procedures were designed to restore a portion of his eyesight lost to cataracts, his glaucoma remained, and, alone, prevented a return to work.

27. In light of his diagnoses and related symptoms, restrictions and limitations, Dr. Shah agreed that Dr. Cooper was unable to perform the duties required of an obstetrician and gynecologist. Accordingly, Dr. Shah informed Unum that, as a result of his diagnoses, and despite his surgeries, Dr. Cooper "will be permanently disabled."

28. Upon receipt of the claim forms, Unum acknowledged Dr. Cooper's claim and contacted him on June 6, 2024 to discuss the status of the claim. During the call, Dr. Cooper informed Unum that, even at 86 years of age he would "love to" be able to return to work, but following discussions with his attending physicians, he understands that is not going to be possible.

29. Upon receipt of these medical records, Unum asked in-house medical consultant Jennifer Driscoll, M.D., to prepare a "paper review" of Dr. Cooper's medical records and offer an opinion regarding his disability claim. Unum's decision to seek Dr. Driscoll's opinion was interesting given that her expertise is in family medicine, while Dr. Cooper very clearly suffers from eye problems. Unum did not explain why it initially failed to consult with an ophthalmologist or other eye specialist.

30. Consistent with her employment by Unum, Dr. Driscoll declared that she believes that Dr. Cooper should have been able to return to work on a fulltime basis as of June 19, 2024 and onward. Dr. Driscoll's analysis did not state specifically why she disagreed with the opinions of Dr. Cooper's examining and treating physicians. Nor did it indicate why, as a family medicine specialist, her review of ophthalmology records should be given more weight than the review and conclusions reached by specialists such as Dr. Shah.

31. In a letter dated August 12, 2024, Dr. Driscoll wrote to Dr. Shah, asking

DONAHUE & HORROW, LLP

him whether he agreed with her conclusion that Dr. Cooper was able to work from June 19, 2024 and onward. In response, Dr. Shah informed Dr. Driscoll that he disagreed with her assessment. He explained that Dr. Cooper remained disabled and unable to return to work as an obstetrician and gynecologist, noting that "because of his severe glaucoma, it is not safe for him to do surgery/operate."

32. Despite the medical evidence offered in continued support of his claim, Unum sent a letter to Dr. Cooper, dated August 28, 2024, informing him that it would not pay him LTD benefits and was denying his claim.

33. By letters dated September 5, 2024 and September 11, 2024, Dr. Cooper timely informed Unum that he was appealing the erroneous decision to deny his claim for LTD benefits. Dr. Cooper explained to Unum that he could no longer work due to poor vision, which is expected to get worse. He further explained that, due to his poor vision, he can no longer operate on patients, or even perform in-office procedures such as ultrasounds. He explained that, for example, given the current status of his vision he could not perform laparoscopic surgery because "one mistake could cost a patient's life." Dr. Cooper noted that he worked until he was 86 years old and would continue working if he could, but simply could not safely work as an obstetrician and gynecologist any longer. Hopeful that Unum would, finally, do the right thing, Dr. Cooper ended his letter with a final phrase: "help please."

34. Unum, of course, did not help Dr. Cooper. Instead, Unum insisted that Dr. Cooper, an 86-year-old individual with exceedingly restricted vision, should return to work and put the lives of women and unborn children at risk.

35. As part of his appeal, Dr. Cooper continued to provide Unum with copies of and access to his medical records. Like the records previously provided to Unum, these updated medical records further confirmed that, despite his best efforts to treat his symptoms and improve his overall condition, he remained disabled. The records included a statement by Erik E. Davydov, M.D., that "[i]t is my medical opinion that Martin Cooper is disable[d] for all kinds of work."

36. Also among the records were the results of a September 19, 2024 examination during which Dr. Shah noted that Dr. Cooper continued to suffer from severe POAG in both eyes. Dr. Shah again explained that Dr. Cooper "is unable to work due to severe glaucoma."

37. Dr. Cooper then wrote another letter to Unum, pleading with the company to overturn its claim denial, and noting that Dr. Shah again stated that he could not return to work. Dr. Cooper informed Unum that "I would love to work, but I do not wish to harm our patients in any way. If I could see to do the fine work" required, he would agree with Unum's determination, but he simply cannot.

38. On November 26, 2024, Dr. Shah wrote another letter in support of Dr. Cooper's claim, stating:

> Dr Cooper has severe glaucoma based on optic disk imaging and clinical examination. He has had surgery and is on long-term medication. He is unable to perform his duties (surgery and physical exams) as an OB/GYN physician because of his visual impairment.

39. While Unum had the option of asking Dr. Cooper to appear for an examination by a physician of its choosing, it failed to do so; again, choosing to rely on the opinions of its paid physicians who never talked to or examined Dr. Cooper. Despite repeated warnings by Courts that the opinions of "paper review" physicians are inherently less reliable than the opinions offered by treating and examining physicians, during the appeal process, Unum asked two more physicians to conduct "paper reviews" of the medical records.

40. While the records reviewed by Unum's paid physicians included the consistent conclusion that Dr. Cooper was unable to continue working as an obstetrician and gynecologist, Unum's paid physicians concluded otherwise. Despite failing to explain why it believed that the opinions of non-examining physicians should carry more weight than Dr. Cooper's examining and treating medical professionals, Unum decided to place the opinions it paid for above all others.

DONAHUE & HORROW, LLP

41. Despite the overwhelming evidence Dr. Cooper provided to Unum in support of his LTD claim and appeal of Unum's erroneous claim decision, on or about December 11, 2024, Unum denied Dr. Cooper's appeal and affirmed the prior denial.

42. As a direct and proximate result of Unum's failure to provide Dr. Cooper with LTD benefits, he has been deprived of said benefits from on or about July 20, 2024 to the present.

43. Plaintiff has exhausted all required administrative remedies related to his claim, and is allowed to bring a lawsuit against Defendants, pursuant to ERISA, in order to recover all benefits to which he is entitled.

44. As a further direct and proximate result of the denial of benefits, Plaintiff has been required to incur attorneys' fees to pursue this action and is entitled to have such fees paid by Defendants pursuant to 29 U.S.C. §1132(g) (1), ERISA §502(g) (1).

45. A controversy now exists between the parties as to whether Plaintiff is disabled as defined in the Plan. Plaintiff seeks the declaration of this Court that he meets the Plan's definition of disability and thus he is entitled to past due disability benefits under the Plan.

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

1. An award of disability benefits from July 20, 2024 to the date of judgment;

2. For reasonable attorneys' and costs fees incurred in this action; and,

3. For such other and further relief as the Court deems just and proper.

DATED: March 21, 2025

DONAHUE & HORROW, LLP

MICHAEL B. HORROW
SCOTT E. CALVERT
*Attorneys for Plaintiff*
*Martin Cooper, M.D.*

DONAHUE & HORROW, LLP